IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MIGUEL GUERRERO, ET AL., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. B-09-149 |
| PAPEN FARMS INC., | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

BE IT REMEMBERED, that on March 31, 2011, the Court considered Defendant Papen Farms, Inc.'s[1] Motion to Dismiss for Lack of Personal Jurisdiction, Dkt. No. 17; the response and replies thereto, Dkt. Nos. 20–21; the parties' supplemental memoranda of law, Dkt. Nos. 30–31, 45–46; and the sealed exhibits filed April 1, 2010, Dkt. No. 39. Because Plaintiffs have not made a prima facie showing of sufficient minimum contacts to exercise personal jurisdiction in Texas, the Court grants Defendant's motion to dismiss and transfers this case to the United States District Court for the District of Delaware. 28 U.S.C. § 1631 (2006).

### I. Background

Plaintiffs are migrant farm workers and their families residing in South Texas. *See generally* Am. Compl. ¶¶ 8–37, Dkt. No. 15. They bring this action under the Migrant and Seasonal Agricultural Workers' Protection Act (AWPA), 29 U.S.C. § 216(b) and the Fair Labor Standards Act (FLSA), 29 U.S.C. § 1854(a). *Id.* ¶ 4. They also invoke this Court's supplemental jurisdiction under 28 U.S.C. § 1367 over breach-of-contract claims under Texas law. *Id.*

According to the First Amended Complaint, Defendant Papen Farms, Inc. (Papen Farms) is headquartered in Dover, Delaware, and "grows, harvests, packs,

---

[1] This motion was joined by then-Defendants John C. Papen and Richard Papen, who have been voluntarily dismissed as defendants. Dkt. No. 17.

1

and sells vegetables, including cabbages, corn, cucumbers, and green beans for sale in interstate commerce." *Id.* ¶¶ 38–39. Plaintiffs allege that they can be divided into two categories: "working plaintiffs" who were employed by Papen Farms and minor children of working plaintiffs who were housed at Papen Farms.[2] The working plaintiffs aver that they were recruited to perform agricultural work for Papen Farms during various seasons from 1990 to 2007.[3] They allege that during the 2007 season, their wages fell below the minimum wage and Papen Farms did not pay them overtime in violation of the FLSA, *id.* ¶¶ 84–89, and that Papen Farms did not comply with AWPA disclosure, record-keeping, and wage requirements. *See id.* ¶ 92; 29 U.S.C. §§ 1821–22. They also bring a breach-of-contract cause of action under Texas law. *See* Am. Compl. ¶¶ 95–100. All of the plaintiffs aver that Papen Farms failed to comply with AWPA posting requirements, 29 U.S.C. § 1821(c) and (g), and provided substandard housing in violation of the AWPA, 29 U.S.C. § 1823(a)–(b). *See* Am. Compl. ¶ 91.

On December 16, 2009, the then-Defendants filed a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).[4] Dkt. No. 17. This court exercised its discretion to permit the parties to conduct 60 days of discovery concerning personal jurisdiction. Ct. Order 2, Dec. 11, 2009, Dkt. No. 22. The parties timely supplemented the motion to dismiss, attaching numerous deposition excerpts, documents, and sealed telephone records. *See generally* Dkt. Nos. 30, 31 and 39. Four days after filing their supplemental response, Plaintiffs

---

[2] The Amended Complaint avers that the following Plaintiffs were employed by Papen Farms: Guadalupe and Eleazar De Leon, Norma and Miguel Guerrero, Cindy and Juan Hernandez, Maria Martinez, Ruby Martinez, Marciano Martinez, Jose Mora-Rodriguez, Linda Ramirez, Maria Ramirez, Maria Saldana, and San Juanita Saldana. Dkt. No. 15 ¶ 37. The following plaintiffs are not alleged to be working plaintiffs: A.D., D.H., J.H., M.H., S.H., E.M., C.S., A.T., and F.T. *See id.* ¶¶ 11–33.

[3] Plaintiffs aver as follows concerning the specific seasons worked: Miguel and Norma Guerrero, and Jose Mora-Rodriguez: 2004–2007 seasons, *id.* ¶¶ 9, 20; Cindy and Juan Hernandez, Sr.: 2007 season, *id.* ¶ 12; Maria Martinez: 1999–2007 seasons, *id.* ¶ 15; Linda Ramirez: 1999–2005 seasons, *id.* ¶ 17; Guadalupe and Eleazar De Leon: 1990–2006 seasons, *id.* ¶ 23; Maria Saldana: 2002–2006 seasons, *id.* ¶ 26; San Juanita Saldana: 2002–2007 seasons, *id.* ¶ 29; Marciano and Ruby Martinez: 2004–2007 seasons, *id.* ¶ 30; and Marlene Trevino: 2007 season, *id.* ¶ 35.

[4] On the agreement of the parties, the Court granted Defendants an extension to answer or otherwise respond to Plaintiffs' First Amended Complaint. Dkt. No. 16.

voluntarily dismissed John C. Papen and Richard G. Papen as defendants. *See* Dkt. No. 35 at 1.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action "for lack of personal jurisdiction." Plaintiffs "bear[] the burden of establishing personal jurisdiction over a non-resident defendant and that burden is met by making a prima facie showing." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010) (citing *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 (5th Cir. 2000)). When a defendant disputes the factual basis for jurisdiction, "the court may receive interrogatories, depositions, or "any combination of the recognized methods of discovery" to help it resolve the jurisdictional issue." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)).

Though a district court has discretion to determine the type and amount of discovery, "even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts." *Id.* (citations of three cases omitted). Accordingly, in making a prima facie determination of personal jurisdiction, the court must accept "the plaintiff's uncontroverted allegations as true, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Clemens*, 615 F.3d at 378 (citing *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)).

## III. Discussion

The Supreme Court has interpreted the Due Process Clause of the Fourteenth Amendment as requiring a two-part test in order for a federal court to exercise personal jurisdiction: "(1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be

3

consistent with 'traditional notions of fair play and substantial justice.'"[5] *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004) (ultimately quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Minimum contacts may be "subdivided" into two types. *Id.* That is, personal "'[j]urisdiction may be general or specific,' depending on the nature of the defendant's forum-related contacts." *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 585 (5th Cir. 2010) (quoting *Luv N' Care v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006)).

### A. GENERAL PERSONAL JURISDICTION

General personal jurisdiction is appropriate "[w]hen a cause of action does not arise out of a foreign defendant's purposeful contacts with the forum." *Freudensprung*, 379 F.3d at 343 (citing *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)). "General [personal] jurisdiction may be found when the defendant's contacts with the forum state are substantial, continuous, and systematic." *Jackson*, 615 F.3d at 585 (citing *Helicopteros Nacionales*, 466 U.S. at 414–19). The systematic and continuous contacts test "is a difficult one to meet, requiring extensive contacts between a defendant and a forum," and "a defendant must have a business presence in the forum state." *Id.* (citing *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) and *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)). The Fifth Circuit has rejected a "stream-of-commerce" theory of general personal jurisdiction. *See Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 216 (5th Cir. 2000). None of the following suffice to establish general personal jurisdiction: (1) "Injecting a product, even in substantial volume, into a forum's 'stream of commerce,' without more;" (2) "[a]dvertising and marketing through national media;" and (3) "isolated visits to a forum." *Jackson*, 615 F.3d at 585 (citing *Bearry*

---

[5] Because "Texas's long-arm statute reaches to the constitutional limits," the dispositive question is whether the exercise of personal jurisdiction runs afoul of the Due Process Clause. *Clemens*, 615 F.3d at 378 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984)).

4

*v. Beech Aircraft Corp.*, 818 F.2d 370, 375 (5th Cir. 1987); *Johnston*, 523 F.3d at 612; and *Alpine View Co.*, 205 F.3d at 218).

Plaintiffs argue that Papen Farms has had continuous and systematic contacts with Texas for two reasons. First, they argue that Papen Farms has conducted sufficient business activities in Texas to confer general personal jurisdiction. Pls. Resp. to Mot. to Dismiss 18, Dkt. No. 20. Second, they contend that Papen Farms knowingly has employed a major part of its migrant farm worker labor force from Texas for the last twenty years. *See* Pls.' Supp. Reply to Resp. to Mot. to Dismiss 22–23, Dkt. No. 30.

*1. Business Activities*

Since at least 1996, Papen Farms has been listed in the Packer Red Book, which Plaintiffs describe as "a national agricultural merchant publication which includes distribution to produce buyers and stores in Texas." Pls.' Resp. to Mot. to Dismiss 17 (citing Decl. of Daniela Dwyer ¶ 8, Dkt. No. 20 Ex. 1-B); *see also id.* Ex. B (copies of advertisements from 1996–2009). Papen Farms appears on an alphabetical listing of vegetable suppliers; the listing states the dates during which corn, cabbage, and beans are available from Papen Farms. *See id.* at 3. Papen Farms's listings make no mention of Texas or any other state. *See ibid.* After reviewing this advertising and based on Plaintiffs' representations, the Court concludes that Papen Farms's listing in the Packer Red Book is at most "advertising in national media," and does not create sufficient contacts with Texas to support general personal jurisdiction. *See id.*; *Jackson*, 615 F.3d at 385; *Alpine View Co.*, 205 F.3d at 218.

Plaintiffs aver that they sometimes observed trucks with Texas license plates or the names of Texas cities on their sides loading vegetables at Papen Farms. *See, e.g.*, Decl. of N. Guerrero ¶ 12, Dkt. No. 20 Ex. 4; Decl. of M. Martinez ¶ 12, Dkt. No. 20 Ex. 7. They also point out that Papen Farms represents in the Packer Red Book that it handles its own transportation. Dwyer Decl. ¶ 7; *id.* Ex. B at 3. Defendants respond that nothing in the record after jurisdictional discovery supports the conclusion that Papen Farms has a business presence in Texas. Dkt. No. 31 at 25–

26. Papen Farms avers that it owns three trucks which perform deliveries within no more than 500 miles of Dover, Delaware. *See* Supp. Decl. of John Papen ¶¶ 5, 8, Dkt. No. 31 Ex. 21. According to Papen Farms, other buyers arrange their own shipping. *E.g.*, R. Papen Dep. 36–37, Dkt. No. 31 Ex. 1; J. Papen Dep. 11, Dkt. No. 31 Ex. 2. Plaintiffs' observations of trucks with different license plates corroborates Papen Farms's claim that its customers provide transportation for its vegetables except within a few hundred miles of Delaware. Plaintiffs point to nothing in the record showing that Papen Farms has an office in Texas, conducts meetings in Texas, or that a Papen Farms employee has ever visited Texas. Plaintiffs also do not challenge the testimony of Janet Meyer, Papen Farms's Secretary-Treasurer, that revenue from sales to customers with Texas addresses comprised 1.5 to 1.8 percent of Papen Farms's gross revenue from sales of vegetables between 2000 and 2009. *See* Dep. of Janet Meyer 26–27, 45, Dkt. No. 31 Ex. 5.

After reviewing the record, the Court concludes that Plaintiffs have made a prima facie showing that Papen Farms places vegetables into the stream of commerce bound for Texas. However, this is insufficient to confer general personal jurisdiction on this Court. *See, e.g., Alpine View Co.*, 205 F.3d at 216; *Bearry*, 818 F.2d at 375.

*2. Recruiting Activities and Texas Labor Force*

The record establishes that: (1) from 2000–2009, employees with Texas addresses comprised as much as 18% of Papen Farms's agricultural labor force, *see* Dkt. No. 31 Ex. 23 at PF02502;[6] (2) Papen Farms assigned Texas residents a particular series of employee numbers, *e.g.*, J. Papen Dep. 53:12–54:3, Dkt. No. 31 Ex. 2; and (3) Papen Farms assigned all agricultural workers from Texas to one of its three housing camps, Kaczka Dep. 39:7–40:3 (noting workers from other states were also assigned to this camp).

Plaintiffs analogize this case to *Moncevoir Hyppolite v. Gorday*, No. 89-1843-CIV-NESBIT, 1990 WL 80684 (S.D. Fla. Mar. 22, 1990), an AWPA and FLSA case

---

[6] Papen Farms also supplemented its labor force with a crew of Texas residents from a neighboring farm. Kaczka Dep. 29:1–3, Dkt. No. 30 Ex. E.

brought by migrant farm workers recruited in Florida to work on a Georgia farm. *Id.* at *1. The plaintiffs alleged that the defendant farm employed independent farm contractors as recruiters for at least four years before the suit was filed. *Id.* at *3. The farm gave these contractors responsibility for "recruiting and hiring Miami based farm workers, transporting the new recruits from Miami to [the] Georgia farm, supervising housing facilities. . . to be occupied by the farm workers and providing daily transportation for the farm workers to and from the provided housing facilities and [the] Georgia farm." *Id.* Plaintiffs do not allege that Papen Farms employed independent contractors to recruit or transport them from Texas to Delaware. Moreover, even construing all of these facts in Plaintiffs' favor, they establish at most that Papen Farms treated its Texas residents as a distinct group for bookkeeping and housing assignment purposes. This falls short of the daily contact with the forum and "affirmative steps" aimed at the forum labor market found to show adequate minimum contacts in *Moncevoir Hyppolite*. 1990 WL 80684, at *4 (quoting *Neizil v. Williams*, 543 F.Supp. 899, 903–04 (M.D. Fla. 1982)).

B. SPECIFIC PERSONAL JURISDICTION

The specific personal jurisdiction inquiry focuses "on the relationship between the defendant, the forum, and the litigation." *Freudensprung*, 379 F.3d at 343 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). Thus, specific personal jurisdiction exists when "the defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *Clemens*, 615 F.3d at 378 (citing *Burger King*, 471 U.S. at 472); *accord. Jackson*, 615 F.3d at 578 (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). The Due Process Clause also requires that "if a plaintiff's claims relate to different forum contacts of the defendant, specific jurisdiction must be established for each claim;" there is no such thing as supplemental personal jurisdiction. *Seiferth*, 472 F.3d at 275 (citing *Data Disc, Inc. v. Sys. Tech. Assocs. Inc.*, 557 F.2d 1280, 1289 n.8 (9th Cir. 1977)). Plaintiffs argue only that their claims relate to recruitment in Texas,

*see* Dkt. No. 30 at 19–22, so they must demonstrate sufficient minimum contacts related to or arising out of their recruitment to establish specific personal jurisdiction over this litigation. *See Moreno v. Poverty Point Produce*, 243 F.R.D. 265, 271 (S.D. Tex. 2007) (Tagle, J.).

Resolving factual disputes in Plaintiffs' favor, the jurisdictional discovery establishes that Papen Farms's employees conducted pre-employment discussions with someone in each household each season.[7] One of Papen Farms's vice presidents testified that he advised workers to call him before the next season to discuss when and whether work at Papen Farms will be available in the upcoming season. Kaczka Dep. 77:18–78:10, Dkt. No. 30 Ex. E; *id.* at 98:17–100:1; *id.* at 113:21–114:21; *id.* at 121:4–122:7 (describing telephone calls). Papen Farms does not dispute that it sent money to several of the Plaintiff families to enable them to make the trip from Texas to Delaware. *See, e.g.*, G. De Leon Dep. 16:8–17:3, Dkt. No. 30 Ex. H; R. Papen Dep. 75:7–76:23, Dkt. No 30 Ex. D (admitting loans were made); J. Papen Dep. 49:11–50:7, Dkt. No. 30 Ex. B (same); Dkt. No. 30 Ex. K (copy of mail receipt and money order); *id.* Ex. Y–Z, CC (index cards kept by Papen Farms's administrative staff to track loans).

Under *Aviles v. Kunkle*, 978 F.2d 201 (5th Cir. 1992), this record does not suffice to make a prima facie showing of specific personal jurisdiction. In *Aviles*, the Fifth Circuit held that a federal district court in Texas lacked personal jurisdiction in a case brought by migrant farm worker plaintiffs asserting AWPA and FLSA claims arising out of the 1983 cucumber harvest at the defendants' farm located in Ohio. *Id.* at 203 & n.1. The district court found that plaintiffs had made a prima facie showing of specific personal jurisdiction based on "partial commission of a tort in Texas and the recruitment of Texas residents in Texas for employment outside the state."[8] *Id.* at 204 (footnote omitted). The *Aviles* court stated that "[s]uch actions can in some cases provide the requisite minimum contacts permitting a

---

[7] *See* C. Hernandez Dep. 17:13–24, Dkt. No. 30 Ex. Q; E. De Leon Dep. 37:1–25, Dkt. No. 30 Ex. I; S. Saldana Dep. 12:5–13, Dkt. No. 30 Ex. N; N. Guerrero Dep. 20:2–16, Dkt No. 30 Ex. BB; M. Martinez Dep. 16:2–19, Dkt. No. 30 Ex. GG; J. Mora Dep. 17:6–7, 18:2–21, Dkt. No 30 Ex. F.

[8] Plaintiffs do not bring any causes of action sounding in tort.

8

court to exercise personal jurisdiction over a nonresident defendant, but only if the asserted cause of action arises out of these 'contacts.'" *Id.* (citing *Burger King*, 471 U.S. at 472) (other citations omitted). The record identified only two Texas contacts: "one telephone call and one letter which merely advised plaintiffs of the start date of the employment which they had already accepted the previous summer in Ohio." *Id.* at 205. The exercise of specific personal jurisdiction was therefore inappropriate because the district court "specifically found that plaintiffs' AWPA and FLSA claims arose out of their employment at the . . . Ohio farm during the 1983 pickle and tomato harvest, not out of any contacts upon which the district court predicated its exercise of personal jurisdiction." *Id.* at 205.

Plaintiffs attempt to distinguish *Aviles* by arguing that they have made a prima facie showing that they accepted employment from Papen Farms in Texas, not in Delaware in the previous year, and this litigation arises out of those contacts. As already explained, Papen Farms confirmed work availability with Plaintiffs by telephone during the off season after they returned to Texas. *See* Kaczka Dep. 76:18–77:10, Dkt. No. 30 Ex. E. Plaintiffs assert that this constituted recruitment for which the AWPA required disclosures.[9] *See* Am. Compl. ¶¶ 47–48, 5, 92(a), 92(d) ("recruitment practices included calling the working Plaintiffs at their homes in Texas and offering them employment and housing in Delaware"); 29 U.S.C.A. § 1821(a) (2011). Papen Farms used its vice president to perform its alleged recruiting activity, not an independent contractor. *See Flores v. AC, Inc.*, 2003 U.S. Dist. LEXIS 3693 (W.D. Tex. Mar. 5, 2003) (use of independent contractor shielded main company from personal jurisdiction).

Resolving all factual disputes in Plaintiffs' favor, the record discloses that each plaintiff came to Papen Farms in the 2000–2007 seasons either: (1) because he or she initiated contact by telephone from Texas with Papen Farms to inquire about employment; (2) because he or she was told while still in Delaware to call Papen

---

[9] Owing to the AWPA's remedial purpose, recruitment should be given an expansive construction. *See, e.g., Charles v. Burton*, 169 F.3d 1322, 1334 (11th Cir. 1999). However, the limits imposed on personal jurisdiction derive from the Due Process Clause and cannot be expanded *sub silencio* by Congress. *See Burger King*, 471 U.S. at 472–73.

Farms in the off season to determine work start dates and confirm availability; or (3) because he or she was a minor child of a working plaintiff.[10] The first reason, without more, establishes only a mere fortuity that the plaintiff happened to be a Texas resident, which is insufficient to establish purposeful availment. *See Holt Oil & Gas Corp, v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986). The second reason does not suffice to establish personal jurisdiction under *Aviles* because the working plaintiffs did no more than confirm start dates and work availability. 972 F.2d at 204–05; *see also Williams v. Castro*, 21 F. Supp. 2d 691, 694 (S.D. Tex. 1999) (three telephone calls and wiring money from California to Texas so that employee could travel to California to begin employment did not establish specific personal jurisdiction). The third group asserts claims related only to housing conditions and notice violations in Delaware unrelated to recruitment. *See Seiferth*, 472 F.3d at 275 (citation omitted); Am. Compl. ¶ 91. Plaintiffs rely on a number of district court cases to argue that specific personal jurisdiction is appropriate on this record, but, in all of them, the farm defendant utilized a recruiter to direct his recruiting efforts at the Texas labor market. *See Moreno*, 243 F.R.D. at 269 (farm utilized recruiter who placed ad in newspaper; plaintiffs met with recruiter's wife in Texas, received information about hours and housing in Texas, and signed forms related to employment in Texas); *Sarmiento v. Producer's Gin of Waterproof, Inc.*, 439 F. Supp. 2d 725, 727–28 (S.D. Tex. 2006) (farm employed Texas recruiter who met with plaintiff and made promises about amount of work and pay in Texas); *Astorga v. Connleaf Inc.*, 962 F. Supp. 93, 95–96 (W.D. Tex. 1996) (farm employed recruiter in Texas; plaintiffs recruited in Texas; and plaintiffs signed labor contracts in Texas); *see also Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 882–85 (5th Cir. 1993), *aff'd in relevant part* 61 F.3d 1113 (5th Cir. 1995).

### IV. Conclusion

The Court finds that Plaintiffs have not carried their burden to make a prima facie showing of sufficient minimum contacts to support exercise of personal

---

[10] *See, supra,* note 7.

jurisdiction over Defendant Papen Farms, Inc. The Court **GRANTS** Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. Dkt. No. 17.

The Court finds that transfer of this action under 28 U.S.C. § 1631 is in the interest of justice and **ORDERS** this case **TRANSFERRED** to the United States District Court for the District of Delaware.

DONE at Brownsville, Texas, on March 31, 2011.

_____
Hilda G. Tagle
United States District Judge